25CA2161 Peo in Interest of Depatie 01-22-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2161
Pueblo County District Court No. 25MH30109
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Andrew Jason Depatie,

Respondent-Appellant.

---

ORDER AFFIRMED

Division A
Opinion by JUDGE TAUBMAN*
Román, C.J., and Graham*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 22, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado for Respondent-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Respondent, Andrew Jason Depatie, appeals the district court's order authorizing staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to medicate him involuntarily. We affirm.

## I.     Background

¶ 2     Depatie was committed to the hospital after being found incompetent to proceed in a criminal case. He was diagnosed with unspecified mood disorder and presented with symptoms that included grandiose delusions, paranoia, impulsivity, agitation, and threatening behavior. After Depatie became verbally aggressive and physically assaultive to a peer in his unit and was observed engaging in self-harming behavior, the hospital staff placed him on suicide precautions and began giving him emergency medication.

¶ 3     The People then petitioned the district court for authorization to treat Depatie against his will with various antipsychotic and mood stabilizing medications. The district court held an evidentiary hearing, at which Dr. Hareesh Pillai, Depatie's psychiatrist, and Depatie testified. Dr. Pillai described Depatie's disorder and accompanying symptoms. He also described the requested medications — valproic acid (Depakote), lithium, risperidone

1

(Risperdal), and olanzapine (Zyprexa) — and explained their possible side effects. He opined that the medications were necessary to treat Depatie's symptoms.

¶ 4     Depatie denied having a mental illness but agreed that he had previously been diagnosed with a mental illness in 2007. He testified that he was unwilling to take Depakote and lithium due to side effects that "put [him] on the floor" — namely, extreme drowsiness, slurred speech, dry mouth, and shaking. However, he also testified that he would be willing to take risperidone — "a miracle drug" that had worked for him in the past. Depatie further agreed to take Zyprexa, to the extent it was needed to cross titrate to risperidone alone.

¶ 5     The district court granted the petition. It found that Dr. Pillai testified "credibly and persuasively" and that the People had proved all four elements of the test for involuntary medication of drugs in *People v. Medina,* 705 P.2d 961, 973 (Colo. 1985). The court issued an order authorizing the involuntary administration of the requested medications.

## II. Applicable Law and Standard of Review

¶ 6 A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to himself, herself, or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Id.*

¶ 7 Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8, 364 P.3d 499, 502. We defer to the district court's factual findings if they have record support and review its legal conclusions de novo. *Id.* It is for the district court, as the fact finder, to determine the credibility of witnesses; the sufficiency, probative effect, and the weight of the evidence; and the inferences and conclusions to be drawn from the

evidence. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7, 451 P.3d 1229, 1231.

¶ 8    When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13, 412 P.3d 827, 832. The testimony of the treating psychiatrist alone may suffice. *Id.* at ¶ 30, 412 P.3d at 834.

### III.    Analysis

¶ 9    Depatie challenges the sufficiency of the evidence supporting the order. In particular, he contends that the evidence was insufficient to support the district court's findings that the third and fourth *Medina* elements were met. We address each contention in turn.

### A.    Less Intrusive Alternative

¶ 10    First, we address Depatie's contention that the evidence was insufficient to prove the third *Medina* element — that a less intrusive treatment alternative was not available. *Medina*, 705 P.2d at 973. This element "encompasses not only the gravity of any

harmful effects from the proposed treatment but also the existence, feasibility, and efficacy of alternative methods of treating the patient's condition or of alleviating the danger created by that condition." *Id.* at 974. A less intrusive alternative is "an available treatment that has less harmful side effects and is at least as effective at alleviating a patient's condition as the proposed treatment." *People in Interest of Strodtman*, 293 P.3d 123, 133 (Colo. App. 2011).

¶ 11 Depatie contends that a less intrusive alternative to the proposed treatment exists because he had previously been treated successfully with risperidone alone and the proposed addition of Zyprexa, lithium, and Depakote is "unnecessarily intrusive."

¶ 12 True, Dr. Pillai testified that after speaking with some family members he learned that Depatie was prescribed risperidone "earlier in his life" and was "compliant with that medication for the majority of his adult life." Based on this information, Dr. Pillai hoped to "titrate [Depatie] off of Zyprexa and onto the risperidone, continuing the lithium and Depakote." Dr. Pillai also testified that if Depatie were to attain his baseline on a combination of

risperidone, Depakote, and lithium, the next step would be to slowly taper off either Depakote or lithium.

¶ 13    However, Dr. Pillai also testified that while it might be possible for Depatie to be managed with risperidone alone "once he returns to his baseline," right now, "in the midst of his acute mania, he requires a higher dosage [of risperidone] along with mood stabilizers, including Depakote and lithium."  And Dr Pillai further testified that Depatie would need treatment with both antipsychotic and mood stabilizing medications for "an extended period of time" before he expects him to return to baseline.  Dr. Pillai explained, "when individuals suffer from acute manic episodes, the mood stabilizer is the most important aspect of their outpatient treatment regimen."

¶ 14    Crediting this testimony, the district court found that while treatment with risperidone alone would have fewer harmful side effects than the proposed treatment plan, adequate evidence did not support the conclusion that risperidone alone would be enough to keep Depatie stable.  Because the record supports the court's determination, we may not disturb it, and to the extent Depatie

6

asks us to draw different inferences from the testimony, we decline to do so. *See R.C.,* ¶ 7, 451 P.3d at 1231.

### B. Need for Treatment and Legitimate Interest in Refusing Treatment

¶ 15 Next, we address Depatie's contention that the evidence was insufficient to prove the fourth *Medina* element — that his need for the requested medications was sufficiently compelling to override his bona fide and legitimate interest in refusing to take them. In assessing this element, a court must first determine "whether the patient's refusal is bona fide and legitimate." *Medina,* 705 P.2d at 974. If it is, the court must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 16 Pointing to the side effects he has experienced, Depatie summarily asserts that "the benefits of treating him are clearly outweighed by the risks to his health and well-being." However, Depatie does not address the other side of the equation — his need for the requested medications. The district court *accepted* Depatie's

7

assertion that he had bona fide and legitimate reasons for refusing to take the requested medications based on his avoidance of unwanted side effects.  Nevertheless, it found that Depatie's need for the medications outweighed those concerns.

¶ 17    The record supports the district court's findings.  Dr. Pillai opined that the failure to medicate Depatie would be more harmful than the risks posed by the requested medications.  In support of this opinion, Dr. Pillai testified that without the medications Depatie would "likely suffer a significant deterioration and have more severe symptoms of mania similar to how he presented when he . . . initially arrived [at] the hospital."  At that point, Depatie's symptoms were "so severe" that he was "unable to adequately control his behaviors in a manner that [was] safe."  And while Dr. Pillai agreed that Depatie's symptoms had "significantly improved" since being placed on the emergency course of medications, he testified that "this improvement . . . [was] extremely tenuous" and Depatie could "rapidly deteriorate within a day or two or even a week if he was not [medication] compliant."  Because the record supports the court's findings, we may not second-guess them.  *See R.K.L.*, ¶ 13, 417 P.3d at 832.

## IV. Disposition

The order is affirmed.

CHIEF JUDGE ROMÁN and JUDGE GRAHAM concur.